UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:06-CV-33

JODY CAIN,                                                              PLAINTIFF

v.

JOE MICHAEL IRVIN, et. al,                                         DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on the Defendants' Motion for Summary Judgment (Docket #19). The Plaintiff, Ms. Jody Cain ("Ms. Cain"), has responded to that motion (Docket #25) and the Defendants have replied to that response (Docket #27). This matter is now ripe for adjudication. For the following reasons, the Defendants Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

On the night of June 17, 2005, at around 8:00PM - 8:30PM that evening, in Russell Springs, Russell County, Kentucky, Ms. Cain and her then boyfriend, Colt Wilson ("Wilson"), were socializing at the Key Village shopping center in Russell Springs. Ms. Cain and Wilson had arrived at different times at Key Village, and Ms. Cain recalled she did not recognize all of the people who were hanging out with Wilson that night. At some point right after Ms. Cain arrived at Key Village (around 8:00PM - 8:30PM that evening), Tammy Harris ("Harris"), an ex-girlfriend of Wilson, arrived at Key Village. Wilson began talking to Harris, and soon thereafter, an altercation began between the Plaintiff and Wilson. This began when Harris allegedly said some unkind words to Ms. Cain. Friends of Wilson have testified that Ms. Cain approached Wilson, arguing and screaming at him, and then allegedly slapped him twice across his face. In her deposition, Ms. Cain testified that she did not scream at and/or attack Wilson.

At some point, Wilson struck Ms. Cain on the left side of her face using his fist to hit her around her left eye.  The Plaintiff stated that Wilson had a "fist pack" on his hand when he struck her, but Wilson's friends have testified that they did not notice a "fist pack" on his hand.  After being hit, Ms. Cain said that she lost consciousness for a brief time, during which she believes Wilson may have struck her again.  Wilson fled after striking Ms. Cain, and two of his friends, including Nathan Hardin ("Hardin"), helped Ms. Cain to her feet.  Hardin took her to a car where Jacob Sigward ("Sigward") was waiting to drive her to the hospital or any other destination.  Ms. Cain told Hardin and Sigward to take her to the local Pizza Hut where her friend, David McGowan ("McGowan") was working.  Hardin testified that Ms. Cain wanted to find McGowan so that she could get him to "beat up" Wilson; however, Ms. Cain stated that she wanted to find McGowan so that he could take her to the hospital.

Shortly after arriving at the Pizza Hut and meeting up with McGowan, police cruisers arrived at the Pizza Hut at a little after 10:00PM.  The Russell Springs police had been notified about the fight at Key Village, and dispatch sent officers to the scene, with Jeremy West ("West") arriving there first at 9:40PM.  One (1) minute later, Chief Joe Michael Irvin ("Irvin") arrived at Key Village.  Upon learning about the altercation involving Wilson and Ms. Cain, Irvin sent West to the hospital to see if she had been taken there.  West arrived at the Russell County Hospital at 9:56PM, and after discovering that Ms. Cain had not been there he informed Irwin.

Irwin and Officer Melissa Taylor ("Taylor") made contact with Ms. Cain at approximately 10:15PM, near the Pizza Hutt.  Ms. Cain began to describe to Irwin what had taken place earlier that evening.  Irwin, Taylor, Hardin and Ashley Campbell ("Campbell"),

2

another witness of the altercation at Key Village, all stated that they observed Ms. Cain in an intoxicated state, with Hardin and Campbell testifying that they believed the Plaintiff may have been intoxicated before Wilson struck her.  Ms. Cain, Irvin and Taylor all testified that as Irvin spoke with Ms. Cain, her speech was slurred and that she was having problems keeping her balance.  Ms. Cain claims that Irwin was mocking her condition during this time.  Ms. Cain also informed Irwin that she was on medication, and that she had taken her prescription pills earlier that evening, which included Lortab and Xanax.  Irwin checked the pupils of the Plaintiff with a flashlight and noted that they were non-reactive, suggesting to him that Ms. Cain was either intoxicated and/or on a controlled substance.  At one point, Ms. Cain lost her balance and fell, and Irwin grabbed her by her shirt to prevent her from falling; however, Ms. Cain testified that his actions were more aggressive than conciliatory when he grabbed her by her shirt and stood her up.  However, the Plaintiff acknowledges that at no point did Irwin strike her or touch her, other than preventing her from falling down.

Irwin claims he asked Ms. Cain if she needed to go to the hospital, and while Irwin alleges that Ms. Cain refused treatment, the Plaintiff states that she told Irwin she wanted to go to Adair County Hospital, and that he did not acquiesce to her request.  At this time, Taylor noticed a cellophane bag hanging out of the pocket of the Plaintiff.  When the officers questioned the Plaintiff about the bag, she handed it to the officers.  The officers noted that the bag contained prescription medicines outside of the prescription container.  Ultimately, the officers arrested the Plaintiff and charged her with: public intoxication; possession of a controlled substance, schedule III and schedule IV (Lortab and Xanax, respectively); and possession of a controlled substance outside of its original container.

Taylor initially transported Ms. Cain to the Russell County Jail; however, that facility does not house female inmates, so after receiving her into custody, Ms. Cain was transported to the Adair County Jail.  While receiving her into custody, Russell County Deputy Jailer Sheila Wilson Bennett ("Bennett"), testified that she believed the Plaintiff was in an intoxicated state, but that she did not believe the Plaintiff needed medical attention.  Bennett permitted Ms. Cain to make a phone call before she was transferred to Adair County Jail.  In addition, on the medical intake form signed by Ms. Cain, she only listed her "back" as her only medical problem, which stemmed from injuries sustained during a car accident a few years prior to the events on June 17, 2005.

Bennett transported Ms. Cain to the Adair County Jail later that evening.  At that time, Bennett noticed that the left eye of the Plaintiff had begun to swell.  The Adair County Jail refused to admit Ms. Cain because of her swollen eye and slurred speech, so as a result, Bennett transported Ms. Cain to Westlake Regional Hospital in Columbia, Kentucky.  After assessing her at that hospital, Ms. Cain was transferred to University of Louisville Hospital ("University Hospital") for further treatment.  Test run at University Hospital found positive traces of Ms. Cain's prescription medication in her system.  Further testing showed a lack of a brain injury, and no bone fracture of her face, jaw or chest.  She had soft tissue swelling on her head, and eventually she was discharged to her father and prescribed eye drops.

The Plaintiff has since brought federal and state claims against Irwin in his individual and official capacities, as well as the City of Russell Springs, alleging violations of her Fourth and Fourteenth Amendment rights by Irwin and the City of Russell Springs, and state law claims against Irwin for intentional infliction of emotional distress (outrage), assault, battery and

4

negligence.  In addition, the Plaintiff also seeks punitive damages for her alleged injuries under both federal and state law.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case."  *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of the evidence.  To support his position, he must present evidence on which the trier of fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).

While the moving party has the ultimate burden under Fed. R. Civ. P. 56(c), the party responding to the motion also has a burden to properly respond to the arguments asserted against it by the moving party, and failure to do so can lead to the granting of summary judgment in favor of the moving party. *Clark v. City of Dublin, Ohio*, 178 Fed. Appx. 522, 524-25 (6th Cir. 2006).

Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The Defendants contend that summary judgment should be granted in this matter because: 1) Irwin did not use excessive force against Ms. Cain, and even if he did, he is entitled to qualified immunity; 2) Irwin did not unlawfully seize the Plaintiff, and even if he did, he is entitled to qualified immunity; 3) Irwin did not fail to provide adequate medical treatment to the Plaintiff, and even if he did, he is entitled to qualified immunity; 4) the City of Russell Springs is not liable for the alleged constitutional violations committed by Irwin because the Plaintiff has failed to establish a municipal policy as mandated by the United States Supreme Court in *Monell*; 5) the outrage claim asserted against Irwin fails as a matter of law; 6) the assault and battery claims against Irwin fail as a matter of law; 7) the negligence claim against Irwin fails as a matter of law; and 8) the Plaintiff's claim for punitive damages fails as a matter of law. The Court shall address each of these arguments separately.

**1. Excessive Force Claim**

The Plaintiff claims that Irwin violated her Fourth Amendment rights when he used excessive force in arresting her on June 17, 2005.  The Court shall first address whether this claim shall go forward at this time, and if so, whether Irwin is entitled to qualified immunity.

*Fourth Amendment Claim for Excessive Force*

The United States Supreme Court has held that all claims made against law enforcement officers contending that they used excessive force during the course of an arrest or seizure should be analyzed under the reasonableness standard of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395-96 (1990).  To prevail, the plaintiff must show: 1) significant injury; 2) that resulted from the use of clearly excessive force; and 3) that the force was objectively unreasonable in light of the circumstances surrounding the officer at the time,"from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

In the instant matter, the Plaintiff admits that at no time did Irwin strike her or cause her injuries.  The only contact between the parties was when Irwin prevented the Plaintiff from falling by grabbing her by her shirt and standing her up.  Even assuming, for purposes of this argument, that this conduct could be considered a significant injury, the Plaintiff has not nor cannot show that the force used was "clearly" excessive under the circumstances or that the force was objectively unreasonable as the facts suggest that Irwin prevented the Plaintiff from possibly hurting herself even more, but did not intend to hurt the Plaintiff.  Accordingly, the Fourth

Amendment claim for excessive force against Irwin fails as a matter of law.[1]

### Qualified Immunity

In *Harlow v. Fitzgerald*, the United States Supreme Court held that government officials performing discretionary functions are generally shielded from civil liability so long as their conduct does not violate constitutional rights or statutory provisions of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The analysis to determine whether an officer is entitled to qualified immunity is a two-step process that includes: 1) taking into consideration whether a constitutional right has been violated; and 2) if so, determining whether it is a clearly established right that a reasonable official under the circumstances should know. *Wilson v. Layne*, 526 U.S. 703 (1999); *Saucier v. Katz*, 553 U.S. 194, 201 (2001). In *United States v. Lanier*, the United States Supreme Court held that the existence of a decision within a circuit is not necessary for a court to determine if there is clearly established law, but only that a reasonable person under the circumstances would know that their actions violated another person's constitutional right. *United States v. Lanier*, 520 U.S. 259, 265-66 (1997). Additionally, the officer must have "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 122 S. Ct. 2508, 2516 (2002).

Here, the Court has determined that as to the excessive force claim, the Fourth Amendment right of the Plaintiff was not violated. However, even assuming that it was, a reasonable officer under the circumstances would not have known that preventing a party from falling by holding them up by their shirt would violate the constitution. Accordingly, Irwin

---

[1]The Court also notes that the Plaintiff failed to address this argument in her response to the Defendants' Motion for Summary Judgment, and therefore, the Plaintiff did not meet her burden under FRCP 56(c). Accordingly, this claim also fails as a matter of law for this additional reason. *See Clark v. City of Dublin, Ohio*, 178 Fed. Appx. 522, 524-25 (6th Cir. 2006).

would be entitled to qualified immunity for the Fourth Amendment claim of excessive force.

## 2. Unlawful Arrest Claim

The Plaintiff alleges that Irwin violated her rights when he arrested her without probable cause on the evening of June 17, 2005.  The Court shall first address whether this claim shall go forward at this time, and if so, whether Irwin is entitled to qualified immunity.

### *Fourth Amendment Claim for Unlawful Arrest*

The Sixth Circuit Court of Appeals, in *U.S. v. Caicedo*, stated that the "[p]olice may arrest a person without a warrant if they have probable cause at the time of the arrest to believe that the person has committed or is committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1508 (6th Cir.1988)." *U.S. v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996).  While probable cause is a more stringent standard than reasonable suspicion, it does not require the officer to prove his/her suspicions to be correct or more likely true than false. *Id.*  "[B]ecause the probable cause inquiry is an objective one, the officer's subjective reasons for making an arrest need not be the criminal offense for which the known facts provided probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).  Rather, the existence of probable cause 'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.' *Id*. at 152." *Fox v. DeSoto*, 2007 WL 1584212, *6 (6th Cir. 2007).  In making the arrest:

> [a] police officer need not actually have had the crime for which probable cause existed in mind at the time of the arrest; rather, the question is "whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause."

*Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997)(quoting *Gassner v. Garland*, 864 F.2d 394, 398 (5th Cir.1989)).

In the instant case, Irwin had probable cause to arrest the Plaintiff on the evening of June 17, 2005.  In looking at the circumstances at the time of the arrest, even in a light most favorable to the Plaintiff, Irwin not only had to prevent Ms. Cain from falling down because she could not hold herself up, but the Plaintiff also possessed controlled substances outside of their containers, as she admitted such information to Irwin.  Irwin and other witnesses have testified that the Plaintiff's speech was slurred, and that Ms. Cain's pupils did not react when Irwin put a light into her eyes.  The officers arrested the Plaintiff and charged her with: public intoxication; possession of a controlled substance, schedule III and schedule IV (Lortab and Xanax, respectively); and possession of a controlled substance outside of its original container.  Based on the circumstances as well as the facts known by Irwin at the time of the arrest, Irwin had probable cause to arrest the Plaintiff and charge her with those counts.  Accordingly, the Fourth Amendment claim for unlawful arrest against Irwin fails as a matter of law.

### Qualified Immunity

As set out *supra*, the United States Supreme Court held that government officials performing discretionary functions are generally shielded from civil liability so long as their conduct does not violate constitutional rights or statutory provisions of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The analysis to determine whether an officer is entitled to qualified immunity is a two-step process that includes: 1) taking into consideration whether a constitutional right has been violated; and 2) if so, determining whether it is a clearly established right that a reasonable official under the

10

circumstances should know. *Wilson v. Layne*, 526 U.S. 703 (1999); *Saucier v. Katz*, 553 U.S. 194, 201 (2001).

Here, even assuming for purposes of this argument that a constitutional right has been violated, a reasonable official under the same circumstances as Irwin would not have known that arresting a party for not being able to maintain his/her balance, having slurred speech, and possessing controlled substances outside of their containers violated a clearly established constitutional right.  Accordingly,  Irwin would be entitled to qualified immunity for the Fourth Amendment claim of unlawful arrest.

### 3. Failure to Provide Adequate Medical Treatment

The Plaintiff alleges that Irwin violated her rights when he failed to provide her with adequate medical treatment subsequent to her arrest on the evening of June 17, 2005.  The Court shall first address whether this claim shall go forward at this time, and if so, whether Irwin is entitled to qualified immunity.

#### *Fourteenth Amendment Claims for Failure to Provide Adequate Medical Treatment*

The Sixth Circuit Court of Appeals has "explicitly held that a pretrial detainee's right to medical treatment for a serious medical need has been established since at least 1987. *Heflin v. Stewart County*, 958 F.2d 709, 717 (6th Cir.1992)." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005).  "As the Eighth Amendment does not apply to pretrial detainees [] this right to adequate medical treatment attaches through the Due Process Clause of the Fourteenth Amendment, which affords pretrial detainees rights 'analogous' to those of prisoners." *Linden v. Washtenaw County,* 167 Fed. Appx. 410, 415 (6th Cir. 2006)(citing *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir.2001)).  As such, the Eighth Amendment test is applied to

11

pretrial detainees, such as the Plaintiff. *Id.*

In determining whether Irwin violated the constitutional rights of the Plaintiff, the United States Supreme Court has established a two-part test to determine if an Eighth Amendment violation has occurred. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The Court set out that: "[f]irst, the deprivation alleged must be, objectively, 'sufficiently serious,'[in that] a[n] [] official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer* at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The "second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,' [in that] a[n] [] official must have a 'sufficiently culpable state of mind.'" *Farmer* at 834 (quoting *Wilson*, 501 U.S. at 297).  "To sustain such a claim, it is not necessary that the [] officials consciously sought to inflict pain by withholding treatment; it is sufficient to show deliberate indifference to [a prisoner's] serious medical needs." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988).  However, "to establish deliberate indifference, 'the plaintiff must allege facts which, if true, would show that the official being sued perceived facts from which to infer substantial risk to the [pretrial detainee], that he did in fact draw the inference, and that he then disregarded that risk.'" *Linden* at 416 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2001)).

In the instant matter, looking first at the subjective prong of the test in a light most favorable to the Plaintiff, a genuine dispute of material fact exists as to whether or not Irwin was deliberately indifferent to the medical needs of the Plaintiff.  In looking at the subjective prong of the test, the Plaintiff must put forth enough evidence to prove "deliberate indifference" on the

part of Irwin.  As stated *supra*, this requires the Plaintiff to "show that the official being sued perceived facts from which to infer substantial risk to the [pretrial detainee], that he did in fact draw the inference, and that he then disregarded that risk.'" *Linden* at 416 (quoting *Comstock*, 273 F.3d at 702).  While Irwin stated that he did not notice anything wrong with the left eye of the Plaintiff, the jailer at Adair County Jail refused to admit her because of the condition of her eye.  Additionally, Ms. Cain had to receive treatment at two (2) hospitals that evening, before being released to her father at University of Louisville Hospital after several tests were run.  Accordingly, the Plaintiff has satisfied the subjective prong of the test, as factual dispute exists as to the deliberate indifference of Irwin.

In looking at the objective prong of the test, whether a "sufficiently serious" medical need existed, this Court must determine whether the delay in treating the Plaintiff was unreasonable under the circumstances. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-00 (6th Cir. 2004).[2]

In *Hubbard v. Gross*, the Sixth Circuit Court of Appeal examined whether a two (2) hour delay in obtaining medical treatment for an arrestee's broken hand was unreasonable under the circumstances, for purposes of sustaining a Fourteenth Amendment claim. *Hubbard v. Gross,* 199 Fed. Appx. 433, 438 (6th Cir. 2006).  In *Hubbard*, the arrestee was injured after breaking his hand while officers arrested him for driving under the influence. *Id.* at 435-36.  There was a factual dispute between the arrestee and the officers regarding whether the arrestee requested

---

[2]The Court notes that because there is a factual dispute as to whether the injury to the Plaintiff was "obvious," the standard set out in *Blackmore*, not the "verifying medical evidence" standard set out by the Court in *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001), applies to this matter. *Blackmore* at 897.  As such, for purposes of the objective prong of the test, the Court must only determine whether the delay in treatment was reasonable under the circumstances. *Id.* at 899-00.

medical assistance. *Id.*  The arrestee did not receive medical treatment for his hand until two (2) hours after the incident, when the jailer refused to admit the arrestee because of his hand. *Id.* at 436.  In affirming the decision by the district court to enter a directed verdict in favor of the officers, the Court held that a two (2) hour delay in receiving a splint was not unreasonable under the circumstances because the arrestee "did not demonstrate that his 'need was not addressed within a reasonable time frame.'" *Id.* at 438 (quoting *Blackmore* at 899-900).

In the instant matter, similar to *Hubbard*, the delay experienced by Ms. Cain in receiving medical treatment was not unreasonable under the circumstances.  While a dispute exists as to whether the Plaintiff requested medical assistance, that fact is not dispositive in proving unreasonableness on the part of Irwin, as the Plaintiff must prove that her need was not addressed within a reasonable time frame. *Hubbard* at 438.  Here, the Plaintiff first encountered Irwin at 10:16PM, and she was arrested at 10:40PM.  At 12:25AM, less than two (2) hours after her arrest, the Plaintiff arrived at Westlake Regional Hospital to receive treatment.  Similar to *Hubbard*, the Plaintiff has not demonstrated that her need was not addressed within a reasonable time, as her medical needs were redressed not long after her arrest. *Id.* at 438.  Accordingly, the Plaintiff has not satisfied the objective prong of the test, and therefore, her Fourteenth Amendment claim for failure to provide adequate medical treatment asserted against Irwin fails as a matter of law.

### *Qualified Immunity*

As set out *supra*, the United States Supreme Court held that government officials performing discretionary functions are generally shielded from civil liability so long as their conduct does not violate constitutional rights or statutory provisions of which a reasonable

person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The analysis to determine whether an officer is entitled to qualified immunity is a two-step process that includes: 1) taking into consideration whether a constitutional right has been violated; and 2) if so, determining whether it is a clearly established right that a reasonable official under the circumstances should know. *Wilson v. Layne*, 526 U.S. 703 (1999); *Saucier v. Katz*, 553 U.S. 194, 201 (2001).

Here, even assuming for purposes of this argument that a constitutional right has been violated, a reasonable official under the same circumstances as Irwin would not have known that not sending the Plaintiff to the hospital at that time was unconstitutional.  Irwin first learned of the altercation involving Ms. Cain prior to speaking to her at the Pizza Hut.  He sent one of his officers to the Russell County Hospital to see if Ms. Cain had checked in, however, the officer reported she had not.  When Irwin eventually made contact with Ms. Cain, it would have been reasonable to assume that had her injury been serious, she would have gone to the hospital rather than the Pizza Hut.  Further, while a factual dispute exists as to whether Irwin did not abide by the request of Ms. Cain to receive medical treatment and/or if Irwin asked if the Plaintiff wished to receive medical treatment, the Plaintiff did not indicate to Russell Springs police officers upon her reception into custody that she had any medical problem other than her back, as indicated on her reception form.  Lastly, Taylor, the officer who transported Ms. Cain to the Russell County Jail, and Bennett, the deputy who received Ms. Cain at the Russell County Jail, both testified that the Plaintiff did not ask to receive medical attention at any point while she was in their custody.  Accordingly, Irwin would be entitled to qualified immunity for the Fourteenth Amendment claim of failure to provide medical treatment.

15

**4. Municipal Liability of the City of Russell Springs**

The Plaintiff has brought claims Irwin in his official capacity as well as claims against the City of Russell Springs under 42 U.S.C. § 1983, for the alleged deprivation of her rights under the Fourth and Fourteenth Amendments due to the actions of Irwin.

The United States Supreme Court has held that a "suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 67 (1989). As such, a suit against a government agent in their official capacity equates to a suit against the government agency in question. In the instant matter, the office of Irwin is the City of Russell Springs. The Plaintiff asserts that in his official capacity, Irwin's actions are linked to the City of Russell Springs under *Monell v. Department of Social Services*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality may be held accountable for the actions of their employees *only* if these actions stem from the municipalities' own unconstitutional and illegal policies. *Monell* at 690-91 (emphasis added). The conduct of an officer acting illegally in his official capacity does not automatically equate with municipal liability, as municipalities cannot be sued for the acts of their employees, unless such acts stem from a policy or custom of the municipality. *Id.* Therefore, this Court finds that liability against the City of Russell Springs cannot come solely from the acts of Irwin in his official capacity.

However, a municipality may be liable under §1983 through: (1) actions of legislative bodies; (2) agencies exercising delegated authority that amounts to an official policy; (3) the actions of individuals with final decision-making authority; (4) policies of inadequate training or supervision; or (5) custom. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 473, 480, 481-484

16

(1986); *Monell* at 661 and 694; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-390 (1989).

Here, the Plaintiff contends that a municipal policy of the City of Russell Springs can be proven through all five (5) ways.  However, as determined *supra*, Irwin has not committed a constitutional violation against the Plaintiff, and therefore, the City of Russell Springs cannot be liable under *Monell*. *Monell* at 690-91; *see also Watkins*, 273 F.3d at 687 (holding "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").  Still, even assuming that a constitutional violation has been established, the Plaintiff has put forward no evidence to support municipal liability under any of the five (5) *Monell* standards, but has merely stated that all five (5) have been alleged.  Nonetheless, the Court shall address all five (5) of the *Monell* standards.

In looking at the first standard, the actions of legislative bodies, the Supreme Court, in *Pembaur*, held that a single decision by a legislative body may constitute an official act of government policy for purposes of liability under § 1983.  *Pembaur*, 475 U.S. at 480.  Here, the Plaintiff has alleged inaction by the legislative body of Russell Springs; however, in her response, the Plaintiff has not specified what particular inaction the legislative body of Russell Springs failed to take and how that relates to the alleged constitutional violations committed by Irwin.  However, the Sixth Circuit Court of Appeals, in *Taylor v. City of Falmouth*, has held that when setting out a liability claim under a theory of inaction, the plaintiff must establish that the inaction constituted an official policy, such that the deliberate indifference of a city council amounted to an official policy of inaction. *Taylor v. City of Falmouth*, 187 Fed. Appx. 596, 601-02 (6th Cir. 2006)(citing *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir.1996)).  Here, the Plaintiff has not met her burden in proving nor properly asserting an official policy of

17

inaction on behalf of the legislative body of Russell Spring, which ultimately led and/or contributed to the alleged conduct of Irwin.  Accordingly, the first *Monell* standard does not support municipal liability in this matter.

In looking at the second standard, the actions of agencies exercising delegated authority, the Supreme Court, in *Monell*, held that actions by municipal agencies or boards that exercise authority delegated to it by a municipal legislative body may constitute an official policy for purposes of municipal liability under § 1983. *Monell*, 436 U.S. at 661, 694.  Here, the Plaintiff has not specified nor even alleged any agencies involved in this case.  Accordingly, the second *Monell* standard does not support municipal liability in this matter.

In looking at the third standard, the actions of individuals with final-decision making authority, the Supreme Court, in *Pembaur*, held that a municipality may be held liable if an official, responsible for establishing final government policy, makes a deliberate choice to follow a course of action from among various alternatives that leads to a final policy dealing with the legal question at hand. *Pembaur* at 483-484.  The Supreme Court has determined that as a matter of law, a judge, and not a jury, decides whether a person has final decision-making authority. *Jett v. Dallas Independent School District*, 491 U.S. 701, 735, 737 (1989).  Courts may look at state and local laws, as well as customs or usage to determine who has final-decision making authority for the purposes of §1983. *Id.* at 737.  Here, while it may be argued that Irwin had final decision making authority due to his position as Chief of the Russell Springs Police Department, the Plaintiff has not alleged what policies Irwin implemented and/or actions he has taken that can be considered unconstitutional for purposes of establishing municipal liability in this case. Accordingly, the third *Monell* standard does not support municipal liability in this matter.

18

In looking at the fourth standard, the policy of inadequate training or supervision, the United States Supreme Court has held that in order to show a policy of inadequate training, a plaintiff must prove a deliberate indifference by the local government. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-390.  A municipal policy that causes constitutional violations can be the basis for a §1983 claim. *Id*. at 387.  However, the Court stated that only when the failure to train is a deliberate or conscious choice by the municipality can a city be liable under §1983. *Id*. at 389.  The Court noted two circumstances that would lead to a deliberate and indifferent failure to adequately train including: failure to provide adequate training in light of foreseeable serious consequences that could result from a lack of instruction, such as how to use a firearm; and when a city fails to act in response to repeated complaints of unconstitutional acts by its officers. *Id.*

In *Commissioners of Bryan County, Oklahoma v. Brown*, the Supreme Court stated that the culpability of a municipality must be more than mere probability that an officer could cause the constitutional injury, but rather it must depend on the high likelihood that the officer would inflict the particular injury suffered by the plaintiff. *Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 412 (1997).  The Sixth Circuit recognized the *Brown* approach in *Jefferson County, Kentucky v. Lindsay*, emphasizing that a  "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Jefferson County, Kentucky v. Lindsay*, 124 F.3d 197, *4 (1997).

In the instant matter, the Plaintiff has not alleged a deliberate and/or conscious decision by the City of Russell Springs to inadequately train its police officers, nor put forth any evidence to show how such a failure could lead to a foreseeable consequence presented in the instant case.

19

Additionally, the Plaintiff has not put forth any evidence that shows the city failed to respond to repeated complaints of similar conduct.  Accordingly, the fourth *Monell* standard does not support municipal liability in this matter.

Lastly, in looking at the fifth *Monell* standard, custom, the United States Supreme Court has held that municipal governments can be sued for their customs that cause constitutional violations, even if such customs have not been approved by a legislative body.  *Pembaur*, 475 U.S. at 481-482 n.10.  The Sixth Circuit Court of Appeals, in *Doe v. Claiborne County, Tenn*., stated that a "custom," for purposes of *Monell* and §1983, is "so permanent and well settled as to constitute a custom or usage with the force of law...[i]n turn, the notion of 'law' must include [d]eeply embedded traditional ways of carrying out state policy...[i]t must reflect a course of action deliberately chosen from among various alternatives. In short, a 'custom' is a 'legal institution' not memorialized by written law." *Doe*, 103 F.3d at 507-08(internal citations omitted).  In *Doe*, the Court determined that the municipality did not have a custom of inaction that amounted to liability under *Monell* in failing to respond quickly enough to or acting passive during an investigation of a rape victim by a municipality employee. *Id.*

In making this determination, the Court used a four (4) step analysis from *City of Canton v. Harris* that examined: (1) the existence of a clear and persistent pattern of unconstitutional conduct by employees; (2) notice or constructive notice on the part of the municipality; (3) the municipality's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the municipality's custom was the "moving force" or direct causal link in the constitutional deprivation. *Harris*, 109 U.S. at 1204-05.

Here, the Plaintiff has not put forth sufficient evidence to show customs that caused the alleged unconstitutional violations.  The Plaintiff has neither alleged nor proven that a custom caused constitutional violations in question.  Further, the Plaintiff has not demonstrated: a pattern by the City; that the City was put on notice of Irwin's alleged unconstitutional conduct; that the City approved of or turned a blind eye to the conduct; or that the alleged custom was the moving force or direct link to the alleged constitutional violations in this matter.  Accordingly, the fifth *Monell* standard does not support municipal liability in this matter.

Therefore, for the foregoing reasons, the Court finds that the Plaintiff's municipal liability claim against the City of Russell Springs, as well as the claims against Irwin in his official capacity, fail as a matter of law.

### 5. Outrage (Intentional Infliction of Emotional Distress) Claim

The Plaintiff has asserted a state law claim of outrage against Irwin.  However, under Kentucky law, the tort of outrage is a "gap-filler," which provides a remedy to a plaintiff only when no other tort is available. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App.1993); *Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. App. 2000).  As such, when the torts of assault, battery and/or negligence are available to a plaintiff, a claim of outrage is precluded. *Id.* Here, in addition to the outrage claim, the Plaintiff has also brought state law claims against Irwin for assault, battery and negligence.  Accordingly, the Plaintiff's outrage claim against Irwin fails as a matter of law.[3]

### 6. Assault & Battery Claims

---

[3]The Court also notes that the Plaintiff failed to address this argument in her response to the Defendants' Motion for Summary Judgment, and therefore, the Plaintiff did not meet her burden under FRCP 56(c). Accordingly, this claim also fails as a matter of law for this additional reason. *See Clark v. City of Dublin, Ohio*, 178 Fed. Appx. 522, 524-25 (6th Cir. 2006).

In Kentucky, "'[a]ssault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching.' *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001).  Battery is any unlawful touching of the person of another, either by the aggressor, or by any substance set in motion by him or her. *See Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (quoting *Sigler v. Ralph*, 417 S.W.2d 239, 241 (Ky.1967))."*Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. App. 2006).  "[I]ntent is an essential element of assault and battery." *Banks*, 39 S.W.3d at 480.  However, police officers may use such force as is necessary or reasonably appears to be necessary to take into custody the person they are seeking to arrest; they may use such force as may be necessary to make the arrest, but no more. KRS 431.025(3); *City of Lexington v. Gray*, 499 S.W.2d 72, 73 (Ky. 1973)(citing *Maggard v. Commonwealth*, 22 S.W.2d 298 (Ky. 1929)).

Here, as determined *supra*, Irwin did not use excessive and/or unreasonable force when he arrested Ms. Cain.  In addition, the Plaintiff has put forth no evidence that suggests Irwin intended to unlawfully touch her and/or threatened to unlawfully touch her at any point during their conversation.  The Plaintiff admits that the only reason Irwin touched her was so that she would not fall after she lost her balance.  Accordingly, the Plaintiff's claims for assault and battery fail as a matter of law.[4]

### 7. Negligence Claim

Under Kentucky law, to sustain a negligence claim, a plaintiff must prove that a

---

[4]The Court also notes that the Plaintiff failed to address this argument in her response to the Defendants' Motion for Summary Judgment, and therefore, the Plaintiff did not meet her burden under FRCP 56(c). Accordingly, this claim also fails as a matter of law for this additional reason. *See Clark v. City of Dublin, Ohio*, 178 Fed. Appx. 522, 524-25 (6th Cir. 2006).

defendant: had a duty to the plaintiff; he/she breached that duty; and an injury to the plaintiff resulted due to the actions of the defendant. *Illinois Cent. R. R. v. Vincent,* 412 S.W.2d 874, 876 (Ky. 1967). An absence of any of these elements leads to the failure of the claim. *Id.* As noted *supra*, police officers may use such force as is necessary or reasonably appears to be necessary to take into custody the person they are seeking to arrest; they may use such force as may be necessary to make the arrest, but no more. KRS 431.025(3); *Gray*, 499 S.W.2d at 73.

Here, as determined *supra*, Irwin did not use excessive and/or unreasonable force when he arrested Ms. Cain. In addition, the Plaintiff has put forth no evidence to suggest that any action taken by Irwin caused any injury to Ms. Cain. The facts indicate that her injuries were solely caused by her then boyfriend, Wilson, striking her in the face, not Irwin. Lastly, even assuming that the Plaintiff had properly established a negligence claim against Irwin, he would be entitled to "official immunity" for the alleged negligent performance of his discretionary acts. *Yanaro v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001).[5] Accordingly, the negligence claim asserted against Irwin fails as a matter of law.[6]

### 8. Punitive Damages Claim

The Plaintiff has requested an award of punitive damages against Irwin, in both his individual and official capacities, as well as against the City of Russell Springs. As determined *supra*, all of the claims brought by the Plaintiff against the Defendants fail as a matter of law,

---

[5]The Court also notes that the Plaintiff has not alleged bad faith on the part of Irwin, and therefore, state immunity would apply to Irwin in this matter. *See Yanero*, 65 S.W.3d at 523; *see also Ashby v. City of Louisville*, 841 S.W.2d 184, 188-89 (Ky. 1992).

[6]The Court also notes that the Plaintiff failed to address this argument in her response to the Defendants' Motion for Summary Judgment, and therefore, the Plaintiff did not meet her burden under FRCP 56(c). Accordingly, this claim also fails as a matter of law for this additional reason. *See Clark v. City of Dublin, Ohio*, 178 Fed. Appx. 522, 524-25 (6th Cir. 2006).

and therefore, the Court does not need to address this issue at this time.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Docket #19)

is **GRANTED**.  Accordingly, all claims against the Defendants are **DISMISSED**.

An appropriate order shall issue.